LAW OFFICE OF ERIC OLLASON
ATTORNEY AT LAW
182 NORTH COURT
TUCSON, ARIZONA 85701
TELEPHONE (520) 791-2707
PCC NO. 4349
SBA # 014860
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re:<br><br>YAQUI ELECTRIC CO., LLC,<br><br>Debtor. | Small Business Case under Chapter 11<br><br>Case No. 4:13-bk-00500-BMW<br><br>**SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**<br><br>Filed on December 10, 2014 |
|---|---|

## CHAPTER 11 PLAN OF REORGANIZATION FOR DEBTORS

TABLE OF CONTENTS

ARTICLE I

DEFINITIONS

Page

Section 1.1 Definitions. . . . . 3
Section 1.2 Interpretation and Construction of Terms... . . . . 6

ARTICLE II

TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

Section 2.1 Administrative Expenses.. . . . . 7

ARTICLE III

CLASSIFICATION OF CLAIMS

Section 3.1 Classification under Plan.. . . . . 8

ARTICLE IV

TREATMENT OF CLAIMS

Section 4.1 Class 1 - Priority Claim Internal Revenue Service... . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 4.2 Class 2 - Secured Claim Agricredit Acceptance, LLC... . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 4.3 Class 3 - Secured Claim Insulation Distributors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 4.4 Class 4 - Claims of Debtor's Principle and Related Entities . . . . . . . . . . . . . . . . . . . . 10
Section 4.5 Class 5 - General Unsecured Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Section 4.6 Class 6 - Debtor's Equity.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE V

MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1 Business Operations ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE VI

PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

Section 6.1 Disputed Claims ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE VII

EFFECT OF CONFIRMATION OF PLAN

Section 7.1 Effect of Confirmation ... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE VIII

DOMESTIC SUPPORT OBLIGATIONS

Section 8.1 Domestic Support Obligations.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE IX

QUARTERLY FEES AND REPORTS

Section 9.1 Quarterly Fees and Reports. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE X

IMPLEMENTATION AND CONSUMMATION OF THE PLAN

Section 10.1 Implementation and Consummation of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARTICLE XI

RETENTION OF JURISDICTION

Section 11.1 Retention of Jurisdiction .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**INTRODUCTION**

Yaqui Electric, LLC, as debtor and debtor-in-possession (the "Debtor"), proposes the following Second Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to section 1121(a) of the United States Bankruptcy Code. All capitalized terms used in the Plan are defined either in section 101 of the Bankruptcy Code or Article I below.

**ARTICLE I**

**DEFINITIONS**

**Section 1.1** **Definitions**. As used in the Plan, the following terms shall have the respective meanings specified below:

"**Administrative Expense**" means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of their business, amounts owed to vendors providing goods and services to the Debtor during the Chapter 11 Cases, and tax obligations incurred after the Commencement Date, and all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 328, 330, 331 and/or 503 of the Bankruptcy Code, whether fixed before or after the Effective Date.

"**Allowed**" means, with reference to any Claim or Administrative Expense, (a) allowed pursuant to the Plan, (b) not Disputed, (c) listed by the relevant Debtor in its Schedules, as such Schedules may be

amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (d) compromised, settled, Allowed or otherwise resolved pursuant to a Final Order, (e) if Disputed, has been allowed by a Final Order, or (f) asserted by a timely filed proof of Claim or Administrative Expense (or motion for Administrative Expense) as to which no timely objection has been or is interposed (as determined in accordance with Section 6.1 of the Plan or any applicable period of limitation fixed by the Bankruptcy Code, or the Bankruptcy Rules, or the Bankruptcy Court); *provided, however*, that Claims allowed pursuant to an order of the Bankruptcy Court solely for the purpose of voting to accept or reject the Plan shall not be considered "Allowed Claims" hereunder.

"**Chapter 11 Cases**" means the cases commenced by the Debtor pursuant to chapter 11 of the Bankruptcy Code which are jointly administered, if applicable.

"**Claim**" means a "Claim" as defined in section 101(5) of the Bankruptcy Code, against any one or more of the Debtor, or their property, whether or not asserted.

"**Class**" means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan, classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

"**Commencement Date**" means, as to each Debtor, the date of filing of its voluntary petition for relief under the Bankruptcy Code.

"**Confirmation Date**" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Cases.

"**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"**Debtor**" means each Debtor, collectively, including, where applicable, such entity or persons in their capacity as debtor-in-possession in the Chapter 11 Cases pursuant to sections 101, 1107(a) and 1108 of the Bankruptcy Code.

"**Deficiency Claim**" means that portion of a Claim secured by a lien on property in which the estate has an interest that is determined, pursuant to section 506(a) of the Bankruptcy Code or through agreement, to exceed the value of the claimant's interest in such property.

"**Disclosure Statement**" means the disclosure statement relating to the Plan as amended from time to time, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

"**Effective Date**" means the first day on which the Plan become effective in accordance with its terms and the Confirmation Order.

"**Equity Interest**" means any share of common or preferred stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

"**Plan**" means, collectively, these joint chapter 11 plans of reorganization for the Debtor, including all applicable exhibits and schedules annexed hereto or associated herewith that shall be filed with the Bankruptcy Court, as altered, amended or modified from time to time in accordance with the terms hereof, the Bankruptcy Code and the Bankruptcy Rules.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Pro Rata Share**" means the proportion that the amount of any Claim in a particular Class against a particular Debtor bears to the aggregate amount of all Claims in such Class against that particular Debtor, including the estimated Allowed amount of any Disputed Claims in such Class.

"**Secured Claim**" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other

encumbrance, that is not subject to avoidance under applicable bankruptcy or nonbankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the relevant estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).

**Section 1.2 Interpretation and Construction of Terms.**

The words "herein," "hereof," "hereto," "hereunder,"and others of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

If a Claim is to be "reinstated"under the terms of the Plan, it shall mean that such Claim shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding that the holder of such Claim shall not have any right to enforce, with regard to any default occurring prior to the Effective Date, any contractual provision or applicable non-bankruptcy law that entitles the holder of such Claim to demand or receive payment of such Claim prior to its stated maturity date from and after the occurrence of a default, and (i) the holder of the Claim shall retain all of its legal rights respecting the Claim, (ii) the applicable Debtor(s), as reorganized, shall remain liable for the Claim, and (iii) the applicable Debtor(s), as reorganized, shall retain any and all defenses respecting the Claim.

Any term used in the Plan that is not otherwise defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

Except as otherwise expressly provided herein, all references to "$" or "dollars" shall be deemed to be references to the lawful money of the United States of America.

**ARTICLE II**

**TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS**

**Section 2.1 Administrative Expenses**

(a) Generally. Except to the extent that a holder of an Allowed Administrative Expense agrees to less favorable treatment, or as otherwise provided for in the Plan, the Debtor shall pay each Allowed Administrative Expense in full and in Cash on, or as soon as is reasonably practicable after, the later of (i) the Effective Date, and (ii) the date such Administrative Expense otherwise would become due in the ordinary course of business.

A notice setting forth the Administrative Expense Bar Date shall be (i) filed on the Bankruptcy Court's docket. Further notice of the Administrative Expense Bar Date shall be provided as may be directed by the Bankruptcy Court. All requests for payment of Administrative Expense that accrued on or before the Effective Date other than Administrative Expenses that have been paid or that relate to payment of professionals must be filed with the Court and served on counsel for the Debtor by the Administrative Expense Bar Date. Any requests for payment of Administrative Expenses that are not properly filed and served by the Administrative Expense Bar Date shall not appear on the register of claims and shall be disallowed automatically without the need for any objection from the Debtor or the Reorganized Debtor or any action by the Bankruptcy Court. All Administrative Expenses incurred in the ordinary course shall be paid in the ordinary course by the Debtor or the Reorganized Debtor without the need or requirement for the creditor to file a motion, application or claim for allowance of payment thereof.

The Reorganized Debtor, in its sole and absolute discretion, may settle Administrative Expenses in the ordinary course of business without further Bankruptcy Court approval. The Debtor shall have the right to object to any Administrative Expense within 180 days after the Administrative Expense Bar Date, subject to extensions from time to time by the Bankruptcy Court. Unless the Debtor or the Reorganized Debtor objects to a timely-filed and properly served Administrative Expense, such

Administrative Expense shall be deemed Allowed in the amount requested. In the event that the Debtor or the Reorganized Debtor object to an Administrative Expense the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense should be allowed and, if so, in what amount.

(b) Professional Compensation and Reimbursement Claims. Any entity seeking an award by the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (ii) be paid by or on behalf of the Debtor or Reorganized Debtor, in full, in Cash, in such amounts as are Allowed, upon (a) the date the order granting such award becomes a Final Order, or as soon thereafter as is practicable, or (b) such other terms as may be mutually agreed upon by the professional and the Debtor or Reorganized Debtor. Notwithstanding any of the foregoing, the applicable Debtor or Reorganized Debtor shall assume all postpetition liabilities, fees and expenses for, and make payment in the ordinary course to any professional retained by the Debtor as an ordinary course professional pursuant to that certain order of the Bankruptcy.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

**Section 3.1** Classification under Plan. Claims against the Debtor, other than Administrative Expenses and Priority Tax Claims are classified for all purposes, including voting (unless otherwise specified), confirmation, and distribution pursuant to the Plan, as follows:

| Class | Description | Impairment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Claim Internal Revenue Service | Impaired | Yes |
| 2 | Secured Claim Agricredit Acceptance, LLC | Impaired | Yes |
| 3 | Secured Claim Insulation Distributors | Impaired | Yes |
| 4 | Claims of Debtor's Principles and Related Entities | Impaired | No |
| 5 | General Unsecured Claims | Impaired | Yes |
| 6 | Debtor's Interest | Impaired | No |

## ARTICLE IV

## TREATMENT OF CLAIMS

**Section 4.1 Class 1 - Priority Claim of Internal Revenue Service ("IRS")**

(a) Impairment and Voting. **Class 1 is impaired by the Plan.** Each holder of an impaired allowed priority claim is entitled to vote to accept or reject the Plan.

(b) Distributions. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, settlement and release of and in exchange for such Allowed Claim, from the Debtor obligated for the payment of such Allowed Priority Tax Claim, following the Effective Date, equal monthly payments, in an aggregate amount equal to such Allowed Priorty Tax Claim, together with a rate of interest determined under applicable nonbankruptcy law pursuant to §511 of the Bankruptcy code of such other amount as determined by the Bankruptcy Court in the Confirmation Order, not exceeding five (5) years after the later of (a) the Commencement Date and (b) the date of assessment of such Allowed Priority Tax Claim. As to the IRS, Debtor proposes to make thirty-six (36) monthly payments in the approximate amount of $1,387.16 which will pay the remaining IRS priority tax claim, in the amount of $55,488.20 with 0% interest,

within three (5) years. The Debtor has disputed the amount owed to the IRS pursuant to objection to the IRS Proof of Claim filed contemporaneously with this Amended Plan.

**Section 4.2 Class 2 - Secured Claim of Agricredit Acceptance, LLC ("Agricredit")**

(a) Impairment and Voting. **Class 2 is impaired by the Plan.** Each holder of an impaired allowed secured claim is entitled to vote to accept or reject the Plan.

(b) Distributions. Agricredit's claim is secured by one Utility Lead Trailer (VIN: 1UYFS12908A457601) and one Utility Rear Trailer (VIN: 1UYVFF22918A457701) with a combined value of approximately $15,000.00. For purposes of the Plan, Agricredit shall be allowed its full balance in the approximate amount of $10,018.87 (less the amounts paid prior to confirmation as and for adequate protection). Debtor shall retain the collateral securing this obligation and shall have its claim re-amortized over a period of approximately twenty (26) months with an interest rate of 4%. Debtor shall pay this claim monthly, commencing the first month *following* the month in which the Plan is confirmed in the amount of $400.00. All terms of the promissory note, including but not limited to the due date for monthly payments, shall remain in full effect except for the principal outstanding balance, the monthly payment and the term and interest rate as changed by Debtor's Plan.

**Section 4.3 Class 3 - Secured Claim of Insulation Distributors ("ID")**

(a) Impairment and Voting. **Class 3 is impaired by the Plan.** Each holder of an unimpaired allowed secured claim is not entitled to vote to accept or reject the Plan.

(b) Distributions. ID's claim is secured by a UCC Financial Statement on all business property. ID had no balance as of the date of filing of the Chapter 11 Petition, therefore, ID shall be paid nothing through the Chapter 11 plan. Upon confirmation of the Chapter 11 plan, Insulation Distributors shall release its UCC Financing Statement.

**Section 4.4 Class 4 - Claims of Debtor's Principles and Related Entities**

(a) Impairment and Voting. Class 4 is impaired by the Plan. Class 4 shall abstain from voting because of the common ownership and potential conflict of interest arising

from relationship between the Debtor and John Morales as well as the relationship between the Debtor and Yoeme Holdings, LLC.

(b) Distributions. Claims in this category include any amounts owed by the Debtor to John Morales and to Yoeme Holdings, LLC arising from the rejection of the lease and any amounts due in arrears under the prior lease. Following the effective date of the Plan, Claims in this class shall receive no distribution under the Plan. Only upon completion of the Debtor's Plan shall any amounts be authorized to be paid to the holders of Claims in Class 4. At such time Holders of class 4 claims will be paid according to the reduction paid to class 5 unsecured creditors.

**Section 4.5** **<u>Class 5 - General Unsecured Claims</u>**

(a) Impairment and Voting. **Class 5 is Impaired by the Plan**. Each holder of an allowed general unsecured claim is entitled to vote to accept or reject the Plan.

(b) Distributions. Each holder of an allowed general unsecured claim shall receive its Pro Rata Share of monthly payments of $1,425.00 per month for months 1 through 26, $1,825.00 per month for months 27 through 60, then $2,910.00 per month for months 61 through 120 for a total period of ten (10) years in full satisfaction of their claim. The first payment to Class 5 shall commence the first month *following* the month in which the Plan is confirmed and continue for a period of ten (10) years.

**Section 4.5** **<u>Class 6 - Debtor's Interest</u>**

(a) Impairment and Voting. **Class 6 is Impaired by the Plan**. The Debtor is not entitled to vote to accept or reject the plan.

(b). Distributions. All Estate property shall vest in the Debtor at Confirmation of the Debtor's Chapter 11 plan.

## ARTICLE V

## MEANS FOR FUNDING THE PLAN

**Section 5.1** **Business Operations.** The Plan will be funded by the future operation of the business. During the course of the bankruptcy, various operating cost reduction measures and revenue generating measures have been implemented. With a reasonable restructure of the loan obligations, the surrender of certain secured debt obligations, the Debtor's business will generate sufficient funds to make substantial payment to craeditors over the term of the Plan. In an effort to resolve the objection filed by Quality Electrial Systems, Inc., the Debtor will also be providing an as-yet-undetermined amount of cash as new value to fund Plan payments. The Debtor expects to obtain this additional new value by refinancing of the Huachuca property. The Debtor contends that this new value is satisfactory to fall within the boundaries of the new value exception to the absolute priority rule as set forth in Norwest Bank Worthington v. Ahlers and 203 North LaSalle and its successor cases.

## ARTICLE VI

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**Section 6.1** **Disputed Claims**.

(a) Objections. As of the Effective Date, the Reorganized Debtor and the Schedule III Debtor shall reserve the sole right, to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328, 330, 331 and 503 of the Bankruptcy Code), to make, file and prosecute objections to Claims. The Reorganized Debtor shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable (unless such Claim was already the subject of a valid objection by the Debtor), but in no event shall the service of such an objection be later than one (1) year after the Effective Date, unless such date is extended by order of the Bankruptcy Court. The Bankruptcy Court, for cause, may extend the deadline on the *ex parte* request of the Reorganized Debtor.

(b) Estimations. The Debtor or the Reorganized Debtor may, at any time, request

the Bankruptcy Court to estimate any Claim, pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously have objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim, at any time, including during litigation concerning any objection to such Claim.

## ARTICLE VII

## EFFECT OF CONFIRMATION

**Section 7.1** **Effect of Confirmation**.

Except for the continuing liens, claims, rights and interests of the secured creditors against the Debtor, their estates, and the property as described in the Plan and as permitted in the Confirmation Order, confirmation of a reorganization acts as a discharge, effective on the Effective Date, of any and all debts of the Debtor that arose any time before confirmation, including, but not limited to, all principal and all interest accrued thereon, pursuant to section 1141(d)(1) of the Bankruptcy Code. Such a discharge shall be effective as to each claim, regardless of whether a proof of claim thereof was filed, whether the claim is an allowed claim or whether the holder thereof votes to accept the Plan.

## ARTICLE VIII

## DOMESTIC SUPPORT OBLIGATIONS

**Section 8.1** **Domestic Support Obligations**.

Debtor has no domestic support obligations.

## ARTICLE IX

## QUARTERLY FEES AND REPORTS

**Section 9.1** **Quarterly Fees and Reports**.

Debtor shall continue to pay quarterly fees to the U.S. Trustee until such time as a Final Decree has been entered in this matter by the Court, closing this Chapter 11 proceeding. Debtor shall continue to file monthly operating reports until such time as the Court enters an Order confirming this Chapter 11 Plan of

Reorganization and/or the end of the calendar quarter in which the Plan was confirmed. At such time, Debtor shall cease filing monthly operating reports and shall being filing quarterly post-confirmation reports. These quarterly reports shall be filed until such time as a Final Decree has been entered in this matter by the Court, closing these Chapter 11 Cases.

## ARTICLE X

## IMPLEMENTATION AND CONSUMMATION OF THE PLAN

**Article 10.1** **Implementation and Consummation of the Plan**.

The terms of the Plan subsequent to confirmation shall bind the Debtor, any entity acquiring property under the Plan, and creditor or claimant, whether or not such creditor or claimant has accepted the Plan. All property of the estate shall vest in the Debtor and shall be free from attachment, levy, garnishment or execution by creditors bound by the Plan.

Subsequent to confirmation of the Plan of Reorganization, the Debtor shall continue to engage in their business as presently conducted or in such form or manner as the Debtor may deem advisable. The Plan does not provide for the liquidation of all or substantially all of the property of the estate. Notwithstanding the foregoing, however, the Debtor shall be free to operate in the ordinary course and may without further Order of the Court, convey, sell, assign, purchase, or lease any property for the benefit of the estate.

It shall be the obligation of each creditor participating under the Plan to keep the Debtor advised of its current mailing address. In the event any payments tendered to creditors are mailed, postage prepaid, address (1) to the address specified in the Debtor' schedules and statements, (2) to the address specified in any proof of claim filed by a creditor or claimant herein, or (3) to the address provided by any such creditor or claimant for purposes of distribution, and if subsequently the Post Office returns such distribution due to lack of insufficiency of address or forwarding address, the Debtor shall retain such distribution for a period of six (6) months. Thereafter, the distribution shall revert to the Debtor without further Order of the Court and be free and clear of any claim of the named distributee. The Debtor shall thereafter not be required to

mail subsequent distributions to any creditor for whom a distribution has been by the Post Office. The Debtor reserve the right to modify the Plan in accordance with section 1127 of the Bankruptcy Code. The Plan may be modified prior to confirmation provided that the Plan still complies with section 1122 and section 1123 of the Bankruptcy Code. The Plan may be modified subsequent to confirmation and before substantial consummation of the Plan under such circumstances as may warrant such under section 1123 of the Bankruptcy Code. Any holder of a claim or interest that has been previously accepted or rejected under a confirmed Plan, shall be deemed to have accepted or rejected under a confirmed Plan, shall be deemed to have accepted or rejected any subsequently modified Plan unless the holder of such claim or interest changes its acceptance or rejection of the Plan within the time fixed by the Court.

## ARTICLE XI

## RETENTION OF JURISDICTION

**Section 11.1** **<u>Retention of Jurisdiction</u>**.

The Bankruptcy Court shall retain exclusive jurisdiction over all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To hear and determine any motions for the assumption, assumption and assignment, or rejection of executory contracts or unexpired leases, and the allowance of any Claims resulting therefrom;

(b) To determine any and all adversary proceedings, applications, and contested matters that have been or may be commenced;

(c) To hear and determine any timely objections to, or requests for estimation of, Claims or Administrative Expenses, including, without limitation, any objections to the classification of any Administrative Expense, Claim or Equity Interest, and to allow or disallow any Disputed Administrative Expense or Disputed Claim, in whole or in part;

(d) To hear and determine any objections of the Creditor Representative to the Reorganized Debtor's compromise, settlement, resolution or withdrawal of any objection to a Disputed General Unsecured Claim;

(e) To resolve disputes as to the ownership of any Administrative Expense, Claim, or Equity Interest;

(f) To ensure that distributions to holders of Allowed Administrative Expenses and Allowed Claims are accomplished as provided herein;

(g) To issue such orders as may be appropriate in aid of implementation and execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(h) To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(i) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j) To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(k) To hear and determine disputes or issues arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, Instrument, or other document governing or relating to any of the foregoing, or any settlement approved by the Bankruptcy Court;

(l) To recover all assets of the Debtor and property of the Debtor' estates, wherever located;

(m) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n) Modification of the Plan pursuant to section 1127 of the Bankruptcy Code, prior to the Effective Date, remedy of any defect or omission in the Plan or Confirmation Order, reconciliation of any inconsistency within the Plan and the loan documents, so as to carry out the intent and purpose of the loan documents;

(o) To hear and determine any other matter related to the Plan and not inconsistent with the provisions of the Bankruptcy Code; and

(p) To enter a final decree closing the Chapter 11 Cases.

DATED this 10th day of December, 2014.

LAW OFFICES OF ERIC OLLASON

/s/ Eric Ollason
Eric Ollason, Attorney for Debtor